**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| DESSIE MARIA ANDREWS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:23-cv-00095-DII |
| | § | |
| ALMA S. ADAMS, et. al., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS'**
**<u>MOTION TO DISMISS</u>**

Pro se Plaintiff Dessie Maria Andrews seeks monetary and injunctive relief against over five-hundred current and former members of the United States House of Representatives and Senate in their individual and official capacities.[1] *See* Compl., ECF No. 1, at 1-5. This Court, however, lacks subject-matter jurisdiction over the claims asserted in the Complaint. Andrews merely asserts a generalized grievance concerning the proper functioning of government, and she does not allege that Defendants caused her any particularized injury to confer standing. Additionally, the United States has not waived sovereign immunity for the claims asserted in her Complaint, and Andrews's claims concern Defendants' legislative activity for which they have absolute immunity under the Speech or Debate Clause. Moreover, Andrews's Complaint presents nonjusticiable political questions. Finally, in addition to the jurisdictional issues presented by

---

[1] The undersigned counsel represents Defendants in their official capacities, but the grounds presented in this Motion for dismissing the official-capacity claims equally apply to any individual-capacity claims asserted in the Complaint. If the Court wishes separate briefing on the individual-capacity claims, Defendants would request sufficient time to arrange individual-capacity representation for the over 500 current and former members of Congress named as Defendants.

Andrews's Complaint, she fails to state a claim upon which relief can be granted. Accordingly, the Complaint should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**Background**

In her Complaint, Andrews challenges the constitutionality of various legislative acts between the American Civil War and the present, but her allegations fall broadly into three major categories. First, Andrews challenges the decision to abandon the gold standard, alleging that "the intentional withholding of commodity backed currency to the People is an attack against Dr. Andrews right to life, liberty and the pursuit of happiness." Compl., ECF No. 1 ¶ 88. Second, Andrews alleges that accumulating debt and passing omnibus spending bills are unconstitutional. *See, e.g.*, *id.* ¶¶ 84, 97. Third, Andrews complains about the "War Powers," which she defines as "the setting aside of the Constitution and the Rule of Law during a perceived or declared state of emergency by the Government, and from thereon utilizing whatever force necessary against its Citizens to implement its policies." *Id.* ¶ 8 n.1.[2] According to Andrews, these acts violated Defendants' oaths of office, her constitutional rights, and the rights of "the People."

Construing Defendants' oaths as a "contractual promise" to Andrews and "We the People," Andrews asserts two promissory estoppel claims: one for abandoning a commodity-backed currency and another for accumulating debt under omnibus spending bills. *See id.* ¶¶ 79-102. She also asserts two conspiracy claims, arguing that Defendants acted in concert by passing omnibus bills and forcing martial law under the "War Powers." *See id.* ¶¶ 103-25. Andrews asks that Defendants be removed from office, prohibited from serving in government office in this country or the legal profession, and forbidden from collecting payment for their service. *Id.* ¶¶ 126-27.

[2] Notwithstanding this definition, Andrews does not clearly identify the Acts she considers among the contested "War Powers." Andrews's chief complaint seems to focus on "acts which made the power of the President more powerful than the legislative or judicial branches," Compl., ECF No. 1 ¶ 46, and specifically the creation and expansion of the Federal Reserve, *see, e.g.*, *id.* ¶¶ 53-66.

Andrews also seeks compensation in gold or silver as determined by a jury and a declaration that Defendants violated their oaths of office and failed to secure her rights. *Id.* ¶¶ 128-30. Finally, Andrews asks that "the War Powers" be abolished and the Reconstruction Acts be repealed. *Id.* ¶¶ 131-32.

## Argument & Authorities

### I. This Court should dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.

As a threshold matter, this Court lacks subject matter jurisdiction over the claims in Andrews's Complaint. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 578 (1994). "The party asserting jurisdiction has the burden of establishing it." *McMahon v. Fenves*, 946 F.3d 266, 270 (5th Cir. 2020). "Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re FEMA Trailer Formaldehyde Prod. Liab. Litig., (Miss. Pls.)*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). Such is the case here. Andrews fails to establish standing necessary to confer jurisdiction. Moreover, Andrews's Complaint concerns legislative activity that is protected by both sovereign immunity and the Speech or Debate Clause. Finally, Andrews presents a nonjusticiable political question challenging conduct reserved to the Legislative Branch. Accordingly, the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.

#### A. Andrews has not established Article III standing.

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting U.S.

Const., Art. III, § 2). "[S]tanding is essential to the exercise of jurisdiction and is a 'threshold question . . . [that] determine[es] the power of the court to entertain the suit.'" *Coleman v. Champion Int'l Corp./Champion Forest Prods.*, 992 F.2d 530, 532 (5th Cir. 1993) (quoting *Warth v.* Seldin, 422 U.S. 490, 498 (1975)). The "irreducible constitutional minimum of standing" includes three elements: (1) the plaintiff must have suffered an injury-in-fact; (2) the injury must be fairly traceable to the challenged action of the defendant; and (3) it must be "likely," as opposed to "speculative," that the injury will be redressed by a favorable decision. *Lujan v Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). These elements are "an indispensable part of the plaintiff's case." *Id.* at 561. Andrews, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Here, Andrews has not carried her burden.

**1. Andrews raises a mere generalized grievance.**

First and foremost, Andrews does not establish an injury sufficient to confer standing. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). To be "concrete," an injury must be "'real,' and not 'abstract.'" *Id.* at 340. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way." *Id.* at 339 (citations omitted). It is well established that "a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573-74.

Plaintiff's alleged injury is precisely the undifferentiated, generalized grievance about government that is insufficient to establish standing. Andrews alleges that Defendants violated

their oaths of office and thus "the Rights of the People." *See, e.g.*, Compl., ECF No. 1 ¶ 92. She also alleges that "War Powers" have subjected the American People to tyrannical occupation and involuntary servitude of which they are unaware. *See, e.g.*, *id.* ¶¶ 99-101, 115-20. Andrews openly brings her claims as "one of those People." *See, e.g.*, *id.* ¶¶ 13 n.4, 39, 69. Accordingly, Andrews's claimed injury is merely a generalized harm to the American People writ large, not a particularized injury-in-fact. Andrews is no more directly affected by her allegations than any other person in the United States who may be dissatisfied with the actions of their elected officials.

Although Andrews alleges that Defendants violated *her* right to "life, liberty and the pursuit of happiness," she does not distinguish between the alleged harm to her and "the People" more broadly. *See, e.g.*, *id.* ¶ 88.[3] According to Andrews, the "government has heaped a debt which currently amounts to $99,343 on my shoulders that I can never repay, thus cementing me to the status of indentured servitude." *Id.* ¶ 15. But the Complaint clarifies that Andrews can "never repay" her debt because she "has no access to lawful money." *Id.* ¶ 85. By "lawful money," Andrews means "money backed by some commodity with intrinsic value." *Id.* ¶ 54. In other words, Andrews's alleged injury is based on a generalized grievance about the government: the economic effects of omnibus spending bills, accruing national debt, creating and maintaining the Federal Reserve, and abandoning a commodity-backed currency.

These issues do not uniquely affect Andrews. Andrews does not explain how amassing "an overwhelming debt," earmarking expenditures, or the transition away from commodity-backed currency violates her rights, erodes her security, r otherwise causes any concrete and particularized injury beyond conclusory assertions. *See, e.g.*, *id.* ¶¶ 96-97. Standing alone, a "claim that the

---

[3] Andrews relies on the Declaration of Independence throughout her Complaint, but that document is not law and does not provide an independent right to relief. *See Secor v. Okla.*, No. 16-CV-85-JED-JC, 2016 WL 6156316, at *3 (N.D. Okla. Oct. 21, 2016) (citing cases).

Constitution has been violated" is insufficient to confer standing under Article III. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485 (1982). Rather, Andrews must identify a personal injury that she suffered "*as a consequence* of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees." *Id.* Andrews's claims are based on a mere generalized grievance concerning Defendants' performance of their duties under the Constitution. Her complaints about the monetary system and the economic effects of legislative activity do not affect her any differently than any other American. Accordingly, Andrews fails to allege a particularized injury-in-fact sufficient to confer standing.

**2. Andrews has not established that any alleged injury is traceable to Defendants' conduct.**

Andrews also cannot demonstrate the second element of standing: traceability. "[T]here must be a causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560; *see also Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 451 (5th Cir. 2022) ("To show traceability, a plaintiff must allege that his injury is 'connect[ed] with the conduct about which he complains.'" (citation omitted)). Here, Andrews seems to attribute her alleged injury to four actions: (1) adopting a currency whose value is not determined by a commodity with intrinsic value; (2) passing an omnibus spending bill and accumulating debt; (3) creating and expanding powers granted to the Federal Reserve; and (4) operating under the "War Powers." *See, e.g.*, Compl., ECF No. 1 ¶¶ 8, 83-85, 88, 96, 108-10, 120. Andrews contends that these acts violated Defendants' oaths of office and injured her a result. *See, e.g.*, *id.* ¶ 29.

Andrews, however, challenges the constitutionality of legislation passed well before any Defendant served in the House of Representatives or Senate. Specifically, Andrews alleges that Congress abandoned the gold standard in 1933 after passing the Emergency Banking Act and the

Glass Steagall Act. *Id.* ¶¶ 8, 44, 48. Andrews further complains that Congress abandoned silver as a guarantee of redemption in 1964. *Id.* ¶¶ 51, 62. And she contends that Congress created the Federal Reserve in 1913 and expanded its powers in 1933. *Id.* ¶¶ 41, 58-59. Although Andrews does not clearly define "War Powers," the Complaint specifically identifies the Legal Tender Act in 1862, *id.* ¶ 42, "Lincoln's General Order 100" in 1863, *id.* ¶ 112, the Reconstruction Acts in 1867 and 1868, *id.* ¶ 113, and the Emergency Banking Act and Glass Steagall Act in 1933, *id.* ¶ 8, as possible examples of "War Powers." None of these actions can be fairly traced to any conduct by the Defendants, as they played no role in their passage.

The sole allegation attributable to Defendants concerns the "latest Omnibus Bill" and subsequent accumulation of debt. *See, e.g.*, *id.* ¶¶ 76-77, 83-84, 90-91. But Andrews does not explain how amassing "such an overwhelming debt" or earmarking expenditures violates her rights beyond her conclusory assertions. Andrews does not connect any expenditure to her alleged injury other than to say that passing the omnibus bill violated Defendants' oaths of office, the Constitution, and Andrews's "Rights to Life, Liberty and the pursuit of Happiness." *See, e.g.*, *id.* ¶ 84. Accordingly, Andrews has not alleged an injury that is fairly traceable to Defendants.

### 3. Andrews's claims are not redressable by a favorable decision.

Finally, Andrews must show that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). The focus of redressability is "whether, assuming that the requested relief is granted, that relief will likely redress the plaintiffs' injuries." *Hancock Cnty. Bd. of Sup'rs v. Ruhr*, 487 F. App'x 189, 197 (5th Cir. 2012). Here, Andrews's requested relief would not redress her alleged injury.

Andrews requests that Defendants be removed from office, prohibited from serving in government office or in the legal profession, and forbidden from collecting payment from the

United States. Compl., ECF No. 1 ¶¶ 126-27. The Constitution expressly and exclusively authorizes Congress to "punish" or "expel" Members. U.S. Const., Art. I, § 5, cl. 2 ("Each House may determine the Rules of its Proceedings, punish its Members for disorderly Behaviour, and, with the Concurrence of two thirds, expel a Member."). Accordingly, courts lack the power to remove members of Congress from office or disqualify them from holding future office. *See Roudebush v. Hartke*, 405 U.S. 15, 18-19 (1972) (recognizing that the Senate is free to make an "unconditional and final" judgment regarding "who is entitled to the office of Senator"); *Wright v. Brady*, No. Civ.A. H-06-2021, 2006 WL 2371327, at *1 (S.D. Tex. Aug. 15, 2006) ("This court has no authority to order a sitting congressman removed from office."). Because Andrews seeks relief that this Court cannot provide, she fails to establish redressability.

**B. Andrews's claims are barred by sovereign immunity.**

The Complaint should also be dismissed because Defendants are immune for actions in their official capacity, and Andrews has not pleaded any waiver of immunity. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). This immunity extends to federal officials acting in their official capacities. *See Danos v. Jones*, 652 F.3d 577, 581 (5th Cir. 2011) ("[C]laims against officers of the United States in their official capacities are actually claims against the sovereign."). This includes members of Congress as individuals acting in their official capacities. *See Rockefeller v. Bingaman*, 234 F. App'x 852, 855 (10th Cir. 2007) (agreeing that sovereign immunity foreclosed claims against Representative and Senator defendants acting in their official capacities); *Keener v. Congress*, 467 F.2d 952, 953 (5th Cir. 1972) (per curiam) (affirming dismissal because Congress is "protected from suit by sovereign immunity"). "A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (citation omitted). "Plaintiff[s]

bear[] the burden of showing Congress's unequivocal waiver of sovereign immunity." *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009) (citation omitted).

Andrews sues Defendants in both their official and individual capacities, but her allegations exclusively concern Defendants' official conduct as members of Congress: passing legislation, *see, e.g.*, Compl., ECF No. 1 ¶¶ 83-84, 109-114, accumulating debt, *see, e.g.*, *id.* ¶¶ 91-92, 96-97, and coining and valuing money, *see, e.g.*, *id.* ¶¶ 80, 82, 90. Andrews claims that these actions violated Defendants' oaths of office, deprived her of her rights to "Life, Liberty and the pursuit of Happiness," and relegated her to indentured and involuntary servitude. *See, e.g.*, *id.* ¶¶ 84-92, 94, 108-109. Each of these acts are within the scope of authority granted by the U.S. Constitution.[4] Because Andrews asserts claims for acts arising from Defendants' official conduct, she must identify a waiver of sovereign immunity to establish jurisdiction.

Andrews does not and cannot identify any such waiver. First, the United States has not waived sovereign immunity for alleged violations of the Constitution. *F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994) ("[T]he United States simply has not rendered itself liable . . . for constitutional tort claims."); *Partain v. Isgur*, 390 F. App'x 326, 329 (5th Cir. 2010) ("[T]he United States has not, in the FTCA or elsewhere, waived sovereign immunity with regard to alleged civil rights or constitutional violations."). Sovereign immunity thus bars Andrews's claims to the extent they are based on alleged violations of her constitutional rights.

Next, the United States has not waived sovereign immunity for promissory estoppel claims. Sovereign immunity is waived for certain express or implied contract claims against the United

[4] *See* U.S. Const., art. I, § 1 (vesting Congress with "[a]ll legislative Powers"); *id.* § 8, cl. 1 (collect taxes and pay debts); *id.* § 8, cl. 2 (borrow money); *id.* § 8, cl. 3 (regulation of commerce); *id.* § 8, cl. 5 (coining and regulating the value of money); *id.* § 8, cl. 18 ("make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers").

States. *See* 28 U.S.C. § 1346(a)(2). But that waiver does not extend to implied-in-law contract claims like promissory estoppel. *See Carter v. United States*, 98 Fed. Cl. 632, 638-39 (2011) ("[P]romissory estoppel—which seeks a judicially enforced performance of a promise—is no different than an implied-in-law contract, another type of claim over which we have no jurisdiction."); *LCP W. Monroe, L.L.C. v. United States*, Civ. A. No. 17-0372, 2018 WL 3407495, at *5 (W.D. La. May 7, 2018) ("[D]etrimental reliance, a/k/a promissory estoppel, is an implied-in-law contract claim—a claim for which the United States has not waived its sovereign immunity."). Thus, Andrews's promissory estoppel claims are barred by sovereign immunity.

To the extent Andrews's claims are construed as tort claims, they do not fall under the limited waiver of immunity provided by the Federal Tort Claims Act ("FTCA"). *See* 28 U.S.C. §§ 1346(b)(1), 2671-80. The FTCA waives sovereign immunity for claims seeking "money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government" acting within the scope of his office. 28 U.S.C. § 1346(b)(1). By its terms, the FTCA does not apply to injunctive relief like that sought in Andrews's Complaint. *See* Compl., ECF No. 1 ¶¶ 126-129, 131-134. And although Andrews seeks money damages, she does not allege any personal injury or lost property. *See id.* ¶ 130. Rather, she argues that she has a "debt" that she can "never repay," *id.* ¶ 15, because she does not view the U.S. Dollar as "lawful money," *see, e.g.*, *id.* ¶¶ 75, 85-86. Additionally, the FTCA only provides a cause of action against the United States, not federal officials themselves. *See Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181, 183 (5th Cir. 1988) ("It is beyond dispute that the United States, and not the responsible agency or employee, is the proper party defendant in a Federal Tort Claims Act suit."). And the FTCA waives immunity only when the plaintiff has first exhausted her administrative remedies. *See* 28 U.S.C. § 2675(a); *Coleman v.*

*United States*, 912 F.3d 824, 834 (5th Cir. 2019) (explaining that exhaustion is a "jurisdictional prerequisite for FTCA claims that cannot be waived"). And here, Andrews does not assert claims against the United States, and she does not allege that she exhausted her claims.

Moreover, Andrews does not allege a tort claim falling within the FTCA's discrete waiver. To the extent her promissory estoppel claims are liberally construed as tort claims, they would fall under the exemption for misrepresentation or interference with contract rights. *See* 28 U.S.C. § 2680(h) (the FTCA does not apply to claims "arising out of . . . misrepresentation . . . or interference of contract rights"); *Coulibaly v. Kerry*, 213 F. Supp. 3d 93, 126-27 (D.D.C. 2016) (citing cases). And Andrews bases her claims on violations of her constitutional rights resulting from Congress's management of United States currency and accumulation of debt. The FTCA, however, has not waived immunity for constitutional violations, *see supra* p.9, and it expressly excepts from its waiver "[a]ny claim for damages caused by . . . the regulation of the monetary system." 28 U.S.C. § 2680(i).

Finally, Andrews cannot overcome sovereign immunity by mere allegations of unconstitutional conduct. Where an "officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions" and "ultra vires his authority and therefore may be made the object of specific relief." *Danos*, 652 F.3d at 583 (quoting *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949)). But to invoke the ultra vires exception, Andrews must "do more than simply allege that the actions of the officer are illegal or unauthorized." *Id.* (quoting *Ala. Rural Fire Ins. Co. v. Naylor*, 530 F.2d 1221, 1226 (5th Cir. 1976)). She must allege facts establishing that Defendants "acted 'without any authority whatever,' or without any 'colorable basis for the exercise of their authority.'" *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984)).

The ultra vires exception does not apply to Andrews's claims. The exception does not extend to monetary relief. *Id.* And Andrews does not argue that Defendants' powers are limited by statute. Instead, she argues that Defendants' conduct violated the U.S. Constitution and their oaths of office. *See* Compl., ECF No. 1 ¶¶ 81-82, 110. And the Defendants have a colorable basis to exercise their authority. Indeed, the Complaint itself cites several constitutional provisions that supply the necessary authority for defendants to borrow, coin, and regulate the value of money. *See, e.g.*, *id.* ¶ 56. Because Andrews has not, and cannot, identify a waiver of sovereign immunity that would allow her claims to proceed, her claims are barred.

**C. Andrews's claims are barred by the Speech or Debate Clause.**

The U.S. Constitution's Speech or Debate Clause independently immunizes members of Congress from suits for either prospective relief or damages: "[F]or any Speech or Debate in either House, [the Senators and Representatives] shall not be questioned in any other Place." U.S. Const., Art. I, § 6, cl. 1. The Clause provides absolute immunity for any civil suit predicated not only on literal speech or debate, but actions that fall within the "sphere of legitimate legislative activity." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975). "[T]he clause not only provides a defense on the merits but also protects a legislator from the burden of defending himself." *Powell v. McCormack*, 395 U.S. 486, 502-03 (1969). In doing so, the Clause "preserve[s] the independence and thereby the integrity of the legislative process." *United States v. Brewster*, 408 U.S. 501, 524 (1972). When analyzing whether the Speech or Debate Clause applies, courts assess the "nature of the act" to determine "whether, stripped of all considerations of intent and motive, [the challenged] actions were legislative." *Bogan v. Scott-Harris*, 523 U.S. 44, 54-55 (1998). "[O]nce it is determined that Members are acting within the 'legitimate legislative sphere,' the Speech or Debate Clause is an absolute bar to interference." *Eastland*, 421 U.S. at 503.

Andrews's claims fall squarely within the Speech or Debate Clause protections. Andrews's promissory estoppel and conspiracy claims are based on legislation passed by Congress. *See supra* p.9. And passing legislation is "quintessential legislative activity" protected by the Speech or Debate Clause. *See Eastland*, 421 U.S. at 504 (explaining that "consideration and passage or rejection of proposed legislation" is "integral" to legislative activity); *Gravel v. United States*, 408 U.S. 606, 617 (1972) (legislative immunity protects "the act of voting"). Because Andrews's claims seek to hold Defendants liable for their legislative activity, they are barred by the Speech or Debate Clause.

This is true notwithstanding Andrews's conclusory allegations that Defendants violated their oaths of office and the Constitution. Speech or Debate Clause protections are not abrogated by allegations of improper conduct. *See, e.g.*, *Doe v McMillan*, 412 U.S. 306, 312-13 (1973) (concluding that the Clause applies to *all* legislative actions, "even though the[] conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes"). "An act does not lose its legislative character simply because a plaintiff alleges that it violated House Rules, . . . or even the Constitution." *Rangel v. Boehner*, 785 F.3d 19, 24 (D.C. Cir. 2015) (citing cases). "Such is the nature of absolute immunity, which is—in a word—absolute." *Id.* Because Andrews's claims are based on actions that are undeniably legislative, Defendants have absolute immunity under the Speech or Debate Clause.

**D. Andrews's claim concerning how to value United States currency presents a nonjusticiable political question.**

The political question doctrine "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938, 949 (5th Cir. 2011) (quoting *Japan Whaling Ass'n v. Am.*

*Cetacean Soc.*, 478 U.S. 221, 230 (1986)). The Supreme Court has outlined six factors requiring dismissal of a case because it involves a political question:

> [(1)] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [(2)] a lack of judicially discoverable and manageable standards for resolving it; or [(3)] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [(4)] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [(5)] an unusual need for unquestioning adherence to a political decision already made; or [(6)] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker v. Carr*, 369 U.S. 186, 217 (1962). The "presence of one or more of these factors will render the case nonjusticiable under the Article III 'case or controversy' requirement." *Occidental of Umm al Qaywayn, Inc. v. A Certain Cargo of Petroleum Laden Aboard Tanker Dauntless Colocotronis*, 577 F.2d 1196, 1203 (5th Cir. 1978).

Here, Andrews challenges an issue that is textually committed to the Legislative Branch—coining, valuing, and borrowing money. Andrews contends that Defendants violated their oaths of office and the Constitution by adopting currency not backed by commodity and accumulating debt. *See, e.g.*, Compl., ECF No. 1 ¶¶ 88-92, 108-09. The Constitution assigns to Congress the power "[t]o coin Money, [and] regulate the Value thereof," U.S. Const. art. I, § 8, cl. 5, as well as the power "[t]o borrow Money on the credit of the United States," U.S. Const. art. I, § 8, cl. 2. Accordingly, suits challenging congressional monetary decisions are nonjusticiable. *See The Legal Tender Cases*, 110 U.S. 421, 450 (1884) (concluding that the decision to furnish currency is a political question to be determined by congress); *Keener v. Congress*, 467 F.2d 952, 953 (5th Cir. 1972) (affirming dismissal of complaint challenging Congress's decision to abandon the gold standard based on standing, sovereign immunity, and the political question doctrine). These powers are textually committed to Congress, and Andrews's claims are thus nonjusticiable.

## II. This Court should dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

The Complaint should also be dismissed because Andrews fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the complaint need not contain detailed factual allegations, it must include sufficient factual allegations "to raise a right to relief above a speculative level." *Twombly,* 550 U.S. at 555. And although pro se plaintiffs are held to more lenient standards than attorneys, they must still plead factual allegations that raise a right to relief above the speculative level. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). "Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Even under the less demanding standard afforded to pro se litigants, Andrews fails to allege sufficient facts that would entitle her to relief. There is no promissory estoppel cause of action against federal officials. And Andrews has not asserted a predicate tort claim to support her conspiracy claims. To the extent Andrews's conspiracy claims could be liberally construed to assert a claim for conspiracy to violate her civil rights, Andrews is not entitled to relief for such a claim. Accordingly, the Complaint should be dismissed.

### A. Andrews fails to state a promissory estoppel claim.

Andrews's first two causes of action are styled as "promissory estoppel" claims, but she does not specify the legal bases for her claims. *See* Compl., ECF No. 1 ¶¶ 79-102. Federal statutes do not contain express language allowing private parties to seek relief when they detrimentally

rely on government promises. *See McCauley v. Thygerson*, 732 F.2d 978, 980 (D.C. Cir. 1984) ("Principles of promissory estoppel apply less broadly against the federal government than they might in situations involving only private actors."); *Jablon v. United States*, 657 F.2d 1064, 1069 & n.9 (9th Cir. 1981) ("We have not discovered, and the parties have not cited, any precedent in this circuit for an independent cause of action against the government founded upon promissory estoppel."); *see also generally* 28 U.S.C. §§ 1346(a)(2) (providing jurisdiction for express or implied contract claims against the United States), 1491(a)(1) (same); 41 U.S.C. §§ 7101-7109 (governing public contract disputes). Indeed, the Court lacks jurisdiction over implied-in-law contract claims. *See supra* pp.9-10. Accordingly, there is no viable promissory estoppel claim against the Defendants as federal officials.

Moreover, Andrews does not plead sufficient facts to establish the traditional elements of a promissory estoppel claim: (1) a promise, (2) that the promisor should reasonably expect reliance, (3) substantial reliance by the promisee to her detriment, and (4) a finding that injustice can be avoided only by the enforcement of the promise. *See* Restatement (Second) of Contracts § 90(1) (1981).[5] Andrews construes Defendants' oaths of office as a "contractual promise" to Andrews that Defendants would abide by the Constitution. *See* Compl., ECF No. 1 ¶¶ 25, 81-82. But "an oath of office to the United States is not an express or implied contract with any individual citizen." *Farrell v. United States*, No. 09-209C, 2009 WL 3719211, at *3 (Fed. Cl. Oct. 30, 2009) (analyzing contract elements); *see also James v. Martinez*, No. SA-17-CV-680-XR, 2017 WL 5588191, at *5 (W.D. Tex. Nov. 17, 2017) ("[T]aking an oath of office does not create a contractual liability between the Sheriff and members of the general public."). Additionally,

---

[5] Texas and District of Columbia courts both apply the Restatement definition of promissory estoppel. *See MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 977-78 (5th Cir. 2014); *Howard Univ. v. Good Food Servs., Inc.*, 608 A.2d 116, 121 (D.C. 1992).

Andrews does not explain how Defendants' oaths of office induced her reliance to her detriment. Indeed, Andrews merely states in a conclusory fashion that she "relied upon the Defendants to faithfully follow" the Constitution. Compl., ECF No. 1 ¶ 85. She does not allege how she acted any differently because of Defendants' oaths. Thus, Andrews's promissory estoppel claims should be dismissed for failure to state a claim.

**B. Andrews fails to state a conspiracy claim.**

Andrews's remaining two claims are styled as "civil conspiracy" and "conspiracy" claims. *See* Compl., ECF No. 1 ¶¶ 103-125. Here too, Andrews does not explain the bases for her conspiracy claims, but she seems to allege a conspiracy to violate her constitutional rights. *See id.* ¶ 105. No matter how her claims are construed, however, Andrews fails to state a conspiracy claim.

As an initial matter, civil conspiracy is not an independent tort, but a derivative means for establishing liability for an underlying tort. *See WickFire, L.L.C. v. Laura Woodruff; TriMax Media, L.L.C.*, 989 F.3d 343, 358 (5th Cir. 2021) ("[C]ivil conspiracy [is] a 'derivative tort,' meaning it depends on some underlying tort or other illegal act." (quoting *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 140-41 (Tex. 2019)). The word "'derivative' in this context means a civil conspiracy claim is connected to the underlying tort and survives or fails alongside it." *Id.* (quoting *Agar Corp.*, 580 S.W.3d 140-41). At best, Andrews's conspiracy claims are derivative of her promissory estoppel claims, which fail to overcome the necessary hurdles for jurisdiction to vest and otherwise fail to state a claim to relief. As her promissory estoppel claims fail, so do her conspiracy claims.

To the extent Andrews's civil conspiracy claims could be liberally construed as an independent claim alleging a conspiracy to violate her civil rights, that claim also fails. *See* Compl., ECF No. 1 ¶ 105 (identifying "the deprivation of Rights complained of in this petition" as the object of Andrews's civil conspiracy claim). Section 1985(3) proscribes conspiracies "for the

purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). The Fifth Circuit, however, has held that Section 1985(3) does not apply to federal officers. *See Cantú v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019) (citing *Mack v. Alexander*, 575 F2d 488 (5th Cir. 1978)). And Section 1985(3) criminalizes only conspiracies involving the deprivation of "equal protection of the laws" or "equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). That kind of conspiratorial act must be motivated by racial- or class-based animus. *See Cantú*, 933 F.3d at 419. Andrews does not allege any such discriminatory animus. Just the opposite—Andrews broadly alleges that not only her rights have been violated, but also the rights of the American People broadly. The Complaint thus fails to state a conspiracy claim.

**Conclusion**

For the foregoing reasons, this Court lacks subject-matter jurisdiction over Andrews's claims, and the Complaint fails to state a claim to relief. Accordingly, Defendants respectfully request that the Court dismiss the Complaint.

Dated: June 16, 2023

Respectfully submitted,

**Jaime Esparza**
United States Attorney

By: */s/ David B. Goode*
**David B. Goode**
Assistant United States Attorney
State Bar No. 24106014
U.S. Attorney's Office
903 San Jacinto Blvd., Suite 334
Austin, Texas 78701
(512) 916-5850 (phone)
(512) 916-5854 (fax)
david.goode@usdoj.gov

***Attorney for Defendants***

## CERTIFICATE OF SERVICE

I certify that on June 16, 2023, I mailed this document by United States Postal Service to the following non-CM/ECF participant:

**Dessie Andrews**
6715 Skynook Drive
Austin, TX 78745
PRO SE

*/s/ David B. Goode*
David B. Goode
Assistant United States Attorney